UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SHARLENE SHU, MARK TENGOWSKI, ROMAN SIVION, AND MOHAMED ALMAKALEH, individually and on behalf of all others similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES USA, INC. AND TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>Defendants. | Case No. 3:22-cv-04661-LB<br><br>**ORDER DISMISSING COMPLAINT**<br><br>Re: ECF No. 24 |

## INTRODUCTION

In this putative class action on behalf of a nationwide class, a California subclass, and a New York subclass, the plaintiffs allege that the Toyota defendants knowingly misrepresented that RAV4 SUVs came with an advanced-headlight feature (when in fact, they did not), and the plaintiffs relied on that misrepresentation in buying the RAV4s. The plaintiffs claim fraud, violations of state consumer-protection statutes, and breach of warranty.

The defendants moved to dismiss the claims on the grounds that the plaintiffs (1) did not allege fraud with particularity under Fed. R. Civ. P. 9(b) for reasons that include lumping the defendants together without specifying their individual roles and not alleging pre-purchase reliance on specific misrepresentations, (2) did not provide statutory notice under the California

Consumer Legal Remedies Act (CLRA) or allege Toyota's pre-sale notice of the misrepresentations, (3) did not allege the special relationship required to plead negligent misrepresentation under New York law, and (4) did not plausibly plead breach-of-express-warranty claims because they did not allege the specific promises.

The allegations about responsibility are sufficient against Toyota Motor Sales (but not Toyota North America). The court otherwise dismisses all claims with leave to amend: (1) the allegations about the misrepresentations generally are sufficient (with some caveats), as are the express-warranty claims predicated on the promises, but the plaintiffs cannot rely on the new facts in their opposition and instead must amend the complaint; (2) the CLRA claim is dismissed for lack of statutory notice and failure to plead pre-sale notice; (3) the plaintiffs did not allege a special relationship under New York law; and (4) the California Unfair Competition Law (UCL) claims fail because they are predicated on dismissed claims.

## STATEMENT

### 1. The Parties

There are four named plaintiffs: Sharlene Shu, a resident of California who bought her RAV4 here, and Mark Tengowski, Roman Sivion, and Mohamed Almakaleh, residents of New York state who bought their RAV4s there.[1]

The defendants are Toyota Motor North America and Toyota Motor Sales USA, California corporations with their principal places of business in Plano, Texas.[2] The complaint generally refers to them collectively as Toyota.[3] An issue is the sufficiency of the allegations against each individual defendant.[4] Toyota Motor Sales USA is responsible for

> the marketing, advertising, and sales of the RAV4 vehicles, including all versions of the website, brochures, Monroney labels, communications with dealers about the

---

[1] Am. Compl. – ECF No. 16 at 4 (¶¶ 12–15). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶¶ 16–17).

[3] *See, e.g., id.* at 1 (¶ 1).

[4] Mot. – ECF No. 24 at 20.

ORDER – No. 22-cv-04661-LB                    2

RAV4 vehicles, and the maintenance and service of and complaints about the Adaptive Headlights feature in the RAV4 vehicles. It is also the warrantor for the limited warranties offered by Toyota against defects in materials or workmanship.[5]

The complaint alleges that the defendants are agents of each other and acted as a joint venture.[6]

### 2. The Alleged Fraud

Each plaintiff bought a 2022 RAV4 Prime XSE during the time period from December 2021 to February 2022.[7] Toyota gave each plaintiff "written documentation indicating that they were purchasing a RAV4 with a premium package that included adaptive headlights."[8] Adaptive headlights make cars safer to drive at night because the headlights' "sensors cause them to automatically adjust the angle of the lighting when the driver turns the steering wheel," which means that the headlights "pitch the low beams toward the inside of the corner of a turn. By angling the headlights in the direction of travel, the Adaptive Headlights widen the area that the lights cover and illuminate the direction of travel," not just the sides of the road. This makes "hazards on the side of the road more visible and improve[s] safety." The auto-level feature of the headlights also "automatically adjusts the vertical angle of the headlights' beam in response to sensors that detect changes in ride height caused by changes in the number of passengers or luggage volume ."[9]

A "RAV4 Pamphlet" — distributed to dealerships and available online — said that upgraded vehicles like the RAV4 Prime XSEs and RAV4 Hybrid Limited SUVs had the adaptive headlights.[10] The plaintiffs provide screenshots of the marketing materials and downloadable

---

[5] Am. Compl. – ECF No. 16 at 4–5 (¶ 18).

[6] *Id.* at 5 (¶¶ 19–24); Opp'n – ECF No. 29 at 9 (characterizing complaint).

[7] Am. Compl. – ECF No. 16 at 8 (¶ 42), 10 (¶ 51), 12 (¶ 60), and 13 (¶ 69).

[8] *Id.* at 3 (¶ 6).

[9] *Id.* at 7 (¶¶ 34–35).

[10] *Id.* at 6 (¶ 30) (describing "without limitation" eleven specific models that are the subject of the complaint), 7 (¶ 36) (suggests that pamphlets said that the models had the system), 7–8 (¶ 37) (suggests that the misrepresentations were made about the specific models); Opp'n – ECF No. 29 at 7 (short citing the eleven models as the RAV4 Prime XSEs and RAV4 Hybrid Limited SUVs).

ORDER – No. 22-cv-04661-LB                                   3

PDFs. Brochures at the time listed "adaptive headlights" as features of the RAV4 Prime XSEs and Hybrid Limited SUVs. Later, Toyota removed the "adaptive headlights" reference.[11]

New cars are sold with a "Monroney label" that is attached to the car window and lists the manufacturer's suggested retail price (MSRP), including options like the headlights. The stickers for "several" of the RAV4s here said that the vehicles had the adaptive-headlight safety feature.[12]

The plaintiffs allegedly saw misrepresentations that the 2022 RAV4 Prime XSEs had the adaptive headlights.

Ms. Shu bought her RAV4 in Daly City, California, in January 2022. Before she bought the RAV4, she read marketing materials that said that it had the adaptive headlights as a premium feature. She "reviewed the Monroney label on the vehicle she purchased, which included the Adaptive Headlights as a feature of the premium package on her vehicle." When she bought the vehicle, she thought the vehicle had the adaptive headlights "and paid a higher price . . . under th[at] mistaken belief." On July 9, 2022, Toyota sent her a letter telling her that "it has recently come to our attention" that the Monroney label on her RAV4 said that it had the adaptive-headlight feature, it did not have the feature because the "feature is not standard on your model[,] and the price was not included in the MSRP." Toyota "refused to take steps" to replace the RAV4, install headlights, or give a refund.[13]

Mr. Tengowski ordered his RAV4 in upstate New York in February 2022 using Toyota's online tool, which allows buyers to negotiate price and options. His negotiated price included $3,500 for a premium package that included the adaptive headlights. "The adaptive headlights were the key

---

[11] Am. Compl. – ECF No. 16 at 7 (¶ 36); Patek Decl. in Supp. of Req. for Jud. Notice – ECF No. 29-1 at 2 (¶¶ 1–5) & Exs. 1–4 to *id.* – ECF Nos. 29-2–29-5. The court judicially notices the exhibits. First, the motion is unopposed: the defendants contend that the exhibits do not cure the complaint's lack of specificity, but as they clarified at the hearing, they do not dispute authenticity and did not oppose judicial notice. Mot. – ECF No. 24 at 22; Reply – ECF No. 31 at 10–11, 13. Other courts in this district have considered similar information. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) ("[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule, as we do here."); *see also Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2022 WL 783206, at *6 n.1 (N.D. Cal. Mar. 14, 2022) (taking judicial notice of Wayback Machine content and collecting cases).

[12] Am. Compl. – ECF No. 16 at 6–7 (¶¶ 31–33).

[13] *Id.* at 8–10 (¶¶ 42–49).

item" that made him "willing to pay that additional premium." Before he bought the RAV4, he read the marketing materials that said that the adaptive headlights were included. He paid a higher price for the upgraded XSE model under the mistaken belief that it would have the adaptive-headlights feature. After he placed his order, a "trade sheet [was] supplied to" him. It was "the written record of the deal negotiated" and said that the RAV4 had "optional equipment" that included the adaptive headlights. Relying on that representation, he placed a $500 deposit. In spring or summer 2022, Toyota sent him a "new trade sheet" that said that "the adaptive headlights would not be delivered." He emailed the dealership and received no response. When he took delivery of his RAV4 in July 2022, it did not have the adaptive headlights. The dealership refused to install the headlights or issue a refund. Toyota refused to replace the RAV4, install headlights, or give a refund.[14]

Mr. Sivion pre-ordered his RAV4 in Watertown, New York, in December 2021 and negotiated the options and price with the dealership. He "negotiated his auto purchase using the marketing materials on Toyota's" website, which said that he "could obtain adaptive headlights by ordering the navigation package [for $1,620] and the premium package [for $3,350]." "His choices were memorialized in a written order" that said that the "vehicle had 'optional equipment,' including the Adaptive Headlights." The headlights were "the primary feature in those two packages that Mr. Sivion wanted . . . [as] a very important safety feature." Before he bought the RAV4, he read the marketing materials that said that the adaptive headlights were included. He paid a higher price for the upgraded XSE model under the mistaken belief that it would have the adaptive-headlights feature. When he received his RAV4 several months later, it did not have the adaptive headlights. He emailed the dealership, which acknowledged the issue, did not offer a refund or repair, and put him in touch with "Toyota Motors." Toyota "said it was the dealer's responsibility to fix the issue" and refused to install the headlights or issue a refund.[15]

Mr. Almakaleh ordered his RAV4 in upstate New York in January 2022 and negotiated the price and options with the dealership. The dealership gave him a trade sheet — a written record of

---

[14] *Id.* at 10–11 (¶¶ 51–58).
[15] *Id.* at 12–13 (¶¶ 60–67).

the negotiated deal — that said that the vehicle had the adaptive headlights. Before he bought the RAV4, he read the marketing materials, which said that the adaptive headlights were included. He paid a higher price for the upgraded XSE model under the mistaken belief that it would have the adaptive-headlights feature. When he received his RAV4 several months later, it did not have the adaptive headlights. He contacted the dealership, which first offered to install the headlights and then "reneged." It offered $300 "to reimburse Mr. Almakaleh," but he did not accept.[16]

The plaintiffs purchased their RAV4s primarily for personal, family, or household use and believed the adaptive headlights were a valuable safety feature and that the lack of the headlights resulted in safety hazards including driving at night, in low light, or in inclement weather.[17]

Toyota "knew that the RAV4 vehicles it sold and leased in the United States did not contain" the adaptive headlights "as part of the package of features that they had marketed and the Monroney labels and other advertising material were false and deceptive."[18]

### 3. The Classes and the Claims

The proposed classes are as follows:

> **Class**: All persons . . . who purchased or leased, in the United States, a Toyota RAV4 vehicle where any written representation falsely stated that the vehicle included Adaptive Headlights.
>
> **California Subclass**: All class members who made their purchase in the State of California.
>
> **New York Subclass**: All class members who made their purchase in the State of New York.[19]

The complaint has nine claims: (1) fraud, deceit, and misrepresentation (the plaintiffs and the class); (2) deceptive practices in violation of the CLRA (Ms. Shu and the California subclass); (3) false advertising in violation of California's False Advertising Law (FAL) (the plaintiffs, the class, and the California subclass); (4) negligent misrepresentation (the plaintiffs and the class); (5)

---

[16] *Id.* at 13–15 (¶¶ 69–76) (in paragraph 70, also alleges that he contacted "Defendant").

[17] *Id.* at 9 (¶ 44), 10 (¶ 50), 11 (¶ 54), 11–12 (¶ 59), 13 (¶¶ 63, 68), 14 (¶ 72), 15 (¶ 77).

[18] *Id.* at 3 (¶ 9).

[19] *Id.* at 15 (¶ 78).

ORDER – No. 22-cv-04661-LB            6

unfair, unlawful, and fraudulent practices in violation of the UCL (the plaintiffs, the class, and the California subclass); (6) deceptive practices and false advertising in violation of New York's General Business Law (the New York plaintiffs and the New York subclass); (7) breach of an express warranty under California and New York law (the plaintiffs and the class); (8) breach of an express warranty under California's Song-Beverly Consumer Warranty Act (the plaintiffs, the class, and the California subclass); and (9) breach of an express warranty in violation of the federal Magnuson-Moss Warranty Act (the plaintiffs and the class).[20]

### 4. Other Relevant Information

The parties do not dispute that court has diversity jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[21] The court held a hearing on April 6, 2023.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to

---

[20] *Id.* at 17–34 (¶¶ 86–184). The plaintiffs do not claim breach of an implied warranty. Opp'n – ECF No. 29 at 26–31 (analyzing only express warranties and disavowing on page 31 an implied-warranty claim).

[21] Consents. – ECF Nos. 10, 19.

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Fraud allegations elicit a more demanding standard. "In alleging fraud. . . , a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.* (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court

dismisses a complaint because its legal theory is not cognizable, the court should give leave to amend if the plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017).

## ANALYSIS

The claims generally involve fraud or breach of warranty. Toyota moved to dismiss the fraud claims on the ground that the plaintiffs did not allege fraud with particularity under Rule 9(b). The plaintiffs (1) lumped the Toyota defendants together without saying what each did, (2) did not allege that Ms. Shu read the Monroney label (representing that the RAV4 had the adaptive headlights) before she bought the RAV4, (3) did not allege that the New York plaintiffs reviewed the trade sheets before they bought their RAV4s, and (4) in any event did not identify the particular marketing materials or website representations that the plaintiffs relied on. Toyota also moved to dismiss (1) Ms. Shu's CLRA claim on the ground that she did not provide statutory notice or allege Toyota's pre-sale knowledge, (2) the claim for negligent misrepresentation under New York law because there is no special relationship between Toyota and the New York plaintiffs, (3) the warranty claims because the plaintiffs did not allege the promises that they relied on and, for one New York plaintiff, because he did not provide pre-suit notice, and (4) the UCL claim because there are no predicate claims.[22]

The court dismisses the fraud claims, the CLRA claim for lack of statutory notice, the claim for negligent misrepresentation under New York law for failure to allege a special relationship, and the derivative UCL claims. The allegations supporting fraud and breach of warranty generally are sufficient, with the caveats below, but the court dismisses them because the plaintiffs' arguments rest on new facts that are not in the complaint.

---

[22] Mot. – ECF No. 24 at 16–33.

ORDER – No. 22-cv-04661-LB　　　　9

**1. Fraud Claims**

This section addresses the following issues: (1) whether Rule 9(b) applies to the claims for deceptive practices and false advertising under New York's General Business Law §§ 349 and 350; (2) whether the plaintiffs lumped the defendants together without saying what they did individually; and (3) whether the plaintiffs alleged sufficiently the promises that they relied on.

First, claims one through six sound in fraud: for example, common-law fraud (claim one), deceptive practices in violation of the CLRA (claim two), and false advertising in violation of the FAL (claim three). The parties dispute whether Rule 9(b) applies to claim six for violations of New York's General Business Law §§ 349 (prohibiting deceptive practices) and 350 (prohibiting false advertising). *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 93–94 (S.D.N.Y. 2021). It applies because the plaintiffs alleged a "uniform course of fraudulent conduct" as the basis for their claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying this standard). On this record and briefing, the court does not address — in part because it is unnecessary — the plaintiffs' suggestion that Rule 9(b) does not apply to § 349 "because § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Here, the plaintiffs claim only fraud in the form of intentional misrepresentations that the plaintiffs relied on. If, on amendment, the fact allegations suggest a different predicate for the claims, the parties can address the sufficiency of the allegations under the lower standard in a renewed motion to dismiss.

Second, Toyota contends that the plaintiffs lumped the defendants together without specifying what they did individually. The plaintiffs sufficiently allege that Toyota Motor Sales is responsible because it advertises and sells cars. But the complaint says nothing about what Toyota Motor North America does. *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (while there is no absolute requirement that the complaint identify false statements by each defendant, Rule 9(b) does not allow a complaint to lump multiple defendants together and instead requires plaintiffs to differentiate their allegations when suing one or more defendants and to inform each defendant separately of the allegations surrounding his alleged participation in the fraud).

The rule is perhaps more flexible against entity defendants with overlapping functions. But with no allegations about Toyota Motor North America's function (except the conclusory allegation that the defendants are a joint venture), there are no plausible claims against it. *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 745 (C.D. Cal. 2022) (dismissing misleading-advertising claims against Toyota manufacturer defendants under Rule 9(b) because the plaintiffs "[did] not specify which [d]efendant made each allegedly misleading statement . . . [and instead] consistently refer[red] to [the] [d]efendants by their respective manufacturer names, *e.g.*, 'Toyota,' rather than as individual corporate entities, *e.g.*, Toyota North America, Inc.").

The third issue is whether the complaint sufficiently alleged that (1) Ms. Shu read and relied on the Monroney label before she bought the RAV4 and (2) the New York plaintiffs relied on the trade sheets before they bought their RAV4s. The parties do not dispute that reliance is a necessary element of the claims.[23] *See, e.g.*, *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) (fraud); *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (negligent misrepresentation); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (negligent misrepresentation). Generally, the allegations are sufficient.

Ms. Shu "reviewed the Monroney label." The plaintiffs contend that the complaint "logically implies" that she read the sticker (and relied on it) before she bought the RAV4.[24] That inference cannot be drawn because the complaint does not specify when she read the label. On amendment, Ms. Shu must specify what she read and when she read it.

For the New York plaintiffs, the trade sheets memorialized the negotiations and show that the plaintiffs bought the RAV4s with the headlights option. Moreover, the plaintiffs allege that they read the marketing materials before they bought the RAV4s, relied on the misrepresentation that the upgrades that they paid for included the adaptive headlights, and paid more based on their mistaken belief that the adaptive headlights were included. These allegations generally are sufficient to

---

[23] *See, e.g.*, Opp'n – ECF No. 29 at 17 (discussing Ms. Shu's reliance on the misrepresentations).
[24] *Id.* at 17.

ORDER – No. 22-cv-04661-LB                 11

support their claims for fraud, assuming that the plaintiffs identify more specifically the website or marketing materials that they read, and relied on, before they bought their RAV4s.

The complaint's allegations about marketing materials (summarized in the Statement) are fairly generic for all plaintiffs: they reviewed marketing materials and website information and saw the misrepresentations. To support their opposition, the plaintiffs submitted screenshots and PDFs of the marketing materials and websites. In their opposition, they use the exhibits to show that Toyota corrected its misrepresentations by August 2022.[25] These facts are not in the complaint.

The plaintiffs' allegations generally identify the sources of the misrepresentations as the websites and brochures. But "[t]he circumstances constituting the fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Mou v. SSC San Jose Operating Co.*, 415 F. Supp. 3d 918, 924 (N.D. Cal. 2019) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).

The plaintiffs are able to be more specific: they have identified the marketing materials in their opposition. The defendants make fair points about why the generic allegations in the complaint are insufficient: one cannot tell what the plaintiffs saw and how they saw it (*e.g.*, from mailings, on the websites for the dealerships or Toyota, or otherwise). Also, the complaint refers to brochures (plural) rather than the single brochure that the plaintiffs advance now.[26] As the defendants point out, courts have required plaintiffs to identify the specific advertisements and promotional materials that they relied on, and when they saw them.[27] *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *5–7 (N.D. Cal. June 30, 2020) (dismissing the complaint under Rule 9(b) because the plaintiff did not allege what specific advertisement she saw and when she saw it).

That said, Rule 9(b) does not require plaintiffs to identify "the precise web pages viewed and the precise date [they] viewed the representation." *Ehret v. Uber Techs.*, 68 F. Supp. 3d 1121,

---

[25] *Id.* at 16.

[26] Mot. – ECF No. 24 at 22; Reply – ECF No. 31 at 10–11, 13.

[27] Mot. – ECF No. 24 at 22.

1127, 1129 (N.D. Cal. 2014) (the plaintiff alleged that she paid an extra 20% above the metered fare because Uber said that it was a gratuity for the driver but in fact retained part of it; the plaintiff used the Uber app on a particular day, and the inference was that the source of her knowledge was the app or Uber's website, which was sufficient to give Uber knowledge of the specific misrepresentation); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.").

The plaintiffs have said that they can allege more specifically that they relied on materials like those that they submitted with their opposition, especially since this was a national marketing campaign. To the extent that Toyota's removal of the misrepresentations is relevant to knowledge and perhaps intent, it can be added on amendment too. The court grants the motion to dismiss claims one through six for failure to plead fraud with particularity, with leave to amend.

### 2. CLRA

Toyota moves to dismiss the CLRA claim on the grounds that (1) Ms. Shu did not provide written notice under the statute, (2) she did not plead that Toyota had pre-sale knowledge that the Monroney label and other materials were incorrect, which defeats her claims under Cal. Civ. Code § 1770(a)(5) & (7), and (3) she did not allege Toyota's specific intent to defraud, which defeats her claim under Cal. Civ. Code § 1770(a)(9).[28] The court grants the motion.

#### 2.1 Notice

First, Ms. Shu did not provide the written notice required by the CLRA.

If a plaintiff sues for damages under the CLRA, she must send a written notice of the claim to the defendant thirty days before filing suit "by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within

---

[28] Opp'n – ECF No. 29 at 18 n.1 (conceding that dismissal without prejudice is appropriate for claims under Cal. Civ. Code § 1770(a)(2–4)); Reply – ECF No. 31 at 14–17 (addressing the narrowed issues).

California." Cal. Civ. Code § 1782(a). A claim for injunctive relief brought under § 1770 "may be commenced without compliance with subdivision (a)." Cal. Civ. Code § 1782(d). "Not less than 30 days after the commencement of an action for injunctive relief," a plaintiff may amend their complaint to include a request for damages "after compliance with subdivision (a)." *Id.*

"The purpose of the notice requirement . . . is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements," and this "purpose may only be accomplished by a literal application of the notice provisions." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 40–41 (1975); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[f]ederal courts have required strict adherence to the statute's notice provision") (cleaned up); *Keilholtz v. Lennox Hearth Prods., Inc.*, No. C 08-00836 CW, 2009 WL 2905960, at *3 (N.D. Cal. Sept. 8, 2009) ("the pre-litigation notice requirement must be literally applied and strictly construed").

Ms. Shu contends that she satisfied the notice requirement because she filed a complaint for injunctive relief and then amended it to add her claim for damages.[29] This does not satisfy the CLRA because filing a complaint is not the same as sending the letter. The plaintiff cites cases that purportedly support her approach, but they do not. In *Zeiger v. WellPet LLC*, for example, the plaintiffs sent a separate letter to defense counsel providing proper CLRA notice before amending the complaint to add a damages claim. 304 F. Supp. 3d 837, 845 n.1, 855 (N.D. Cal. 2018) (judicially noticing letter and holding that "Plaintiffs . . . provided notice to Defendants on July 19, 2017" in the letter). In *Morgan v. AT&T Wireless Servs., Inc.*, the court held only that amending a complaint to add a CLRA damages claim is allowed "as long as it is done" after "compliance with the notice requirement." 177 Cal. App. 4th 1235, 1260–61 (2009).

The court dismisses the CLRA damages claim without prejudice. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1016–17 (N.D. Cal. 2014) (dismissing CLRA damages claim without prejudice).

---

[29] Opp'n – ECF No. 29 at 20–21.

**2.2  Pre-Sale Knowledge**

Second, Ms. Shu did not plead Toyota's pre-sale knowledge that the Monroney label and other materials were incorrect, which defeats her CLRA claims under Cal. Civ. Code § 1770(a)(5) & (7).

Section 1770(a)(5) prohibits representing that goods or services have "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Section 1770(a)(7) prohibits representing that goods or services "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." "California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *accord In re Toyota RAV4 Hybrid Fuel Tank Litig.*, No. 20-cv-00337-EMC, 2021 WL 5915060, at *14 (N.D. Cal. Dec. 10, 2021); *Baba v. Hewlett-Packard Co.*, No. C 09–05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011).

In *Toyota RAV4 Hybrid Fuel Tank Litig.*, the plaintiffs alleged that the RAV4 had a smaller fuel-tank capacity than advertised (8 to 11 gallons rather than the advertised 14.5 gallons). 2021 WL 5915060, at *1. The district court dismissed the CLRA claim because the plaintiff did not allege that Toyota had pre-sale knowledge through customer complaints. *Id.* at *14; *accord Baba*, 2011 WL 317650, at *1, *2–3 (dismissing CLRA claim that HP computers were tablets or had touchscreens because the plaintiffs did not allege that HP knowingly sold defective products or knew about the complaints). Similarly, the plaintiffs here do not allege Toyota's pre-sale knowledge through customer complaints, product reviews, or anything else.

The plaintiffs' three arguments do not suggest a contrary result.

First, they contend that the "plain language of [§] 1770(a)(5) and (7) includes no pre-sale knowledge element."[30] But under *Wilson*, the plaintiff must "sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." 668 F.3d at 1145.

Second, they distinguish *Toyota RAV4* and *Baba* on the ground that those cases involved "a theory of fraudulent omission and/or concealment of a defect," whereas the CLRA claim here is

---

[30] *Id.* at 19.

ORDER – No. 22-cv-04661-LB    15

based on a "bait and switch theory."[31] *Toyota* and *Baba* involved products that were advertised as having different capabilities (a different fuel-tank capacity in *Toyota* and a touchscreen in *Boba*) than they actually had. This case also involves a product with an advertised capability (adaptive headlights) that was not included. *Toyota* and *Baba* are not distinguishable.

Third, they contend that the complaint alleges pre-sale knowledge.[32] It does not (other than in conclusory allegations that have no predicate fact allegations).

**2.3 Specific Intent to Defraud**

Third, the plaintiff did not allege Toyota's specific intent to defraud, which defeats her claim under Cal. Civ. Code § 1770(a)(9).

Section 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." "Section 1770(a)(9) is the only subsection that requires pleading fraud, since it specifically requires intent to defraud, which, in turn, implies knowledge of the falsity." *In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 921 (9th Cir. 2014) (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009)). There are no non-conclusory allegations of intent that Toyota had pre-sale knowledge of the misstatements, and thus, there are no allegations that Toyota intended to defraud Ms. Shu.[33]

**3. New York Negligent-Misrepresentation Claim**

Toyota moved to dismiss the New York plaintiffs' negligent-misrepresentation claim because they did not allege that Toyota had a special relationship giving rise to a duty.[34]

New York law "requires the existence of a 'special' or 'privity-like' relationship that 'imposes a duty on the defendant to impart correct information to the plaintiff.'" *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 113 (2d Cir. 2012) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)). A contract to purchase a good does not create a special relationship. *See,*

---

[31] *Id.*

[32] *Id.* at 19–20.

[33] Mot. – ECF No. 24 at 25.

[34] *Id.* at 26–27.

*e.g.*, *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022) (buying an iPhone did not "create a special relationship [with Apple] for the purposes of a negligent misrepresentation claim").[35]

The plaintiffs contend that "automobile manufacturers *do* have a duty to provide accurate information to their customers, as set forth in the Monroney Act," 15 U.S.C. §§ 1231–33, which requires labels to be accurate.[36] They contend that Toyota is like a rating agency that has a special relationship to investors. But the case they cite was withdrawn after the Second Circuit issued its decision in *Anschutz* addressing the need for a special relationship. And the replacement opinion dismissed the claims for failure to allege a "direct contact" between the plaintiffs and the defendants that could give rise to a special relationship.[37] The plaintiffs' arguments do not support their position, and they do not otherwise address Toyota's arguments. The court dismisses the claim. It seems unlikely that the amendment can be cured, but the dismissal is without prejudice.

**4. Express-Warranty Claims**

The plaintiffs raise only express-warranty claims. Under California and New York law, there must be an express statement. The court has dismissed the fraud claims with leave to amend to identify the relied-on representations. The court dismisses the warranty claims on the same ground.

Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." N.Y. U.C.C. § 2-313(1)(a). A plaintiff must show "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the

---

[35] *See id.* (collecting other cases).

[36] Opp'n – ECF No. 29 at 24 (citing *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992) (corporation has a duty to be accurate when it makes a voluntary or required disclosure)).

[37] *Id.* (citing *King Cnty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 307 (S.D.N.Y. 2012) ("rating agencies stood in a 'special relationship' to investors who relied on the agencies' ratings"), *withdrawn*, No. 09 Civ. 8387 (SAS), 2012 WL 11896326, at *1 & n.1 (S.D.N.Y. Sept. 28, 2012) (dismissing claims).

breach." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (cleaned up). Plaintiffs must "identify the specific warranty [d]efendants are alleged to have made." *Bruno v. Zimmer, Inc.*, No. CV 15-6129, 2016 WL 4507004, at *5 (E.D.N.Y. Aug. 26, 2016); *accord Cavanagh v. Ford Motor Co.*, No. 13-CV-4584(JS)(WDW), 2014 WL 2048571, at *4 (E.D.N.Y. May 19, 2014) (if a "plaintiff does not identify the terms of the purported warranty he claims to have relied on, any conclusory allegation for breach of express warranty [must] be dismissed") (cleaned up); *Schimmenti v. Ply Gem Indus.*, 156 A.D.2d 658, 659 (N.Y. 1989) ("To support the plaintiffs' cause of action sounding in the breach of an express warranty, they had to show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.") (cleaned up).

Under California law, an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313(1)(a). "[T]o prevail on a breach of express warranty claim, the plaintiff must prove [that] (1) the seller's statements constitute an affirmation or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (cleaned up). "To establish the existence of an express warranty, a plaintiff must point to a specific and unequivocal statement." *Watkins v MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (cleaned up).

The court dismissed the plaintiffs' fraud claims with leave to identify the specific misrepresentations more particularly. The court dismissed Ms. Shu's CLRA claim for the additional reason that she did not say when she read the Monroney label before she bought her RAV4. The express-warranty claims are predicated on the misstatements. The court dismisses the claims — including the California-based claims under the Song-Beverly Act and the plaintiffs'

individual claims under the Magnuson-Moss Act[38] — with leave to amend to allege the statements.

An additional issue under New York law is whether Mr. Tengowski failed to give Toyota pre-suit statutory notice.[39]

Under the New York UCC, a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("a buyer must provide the seller with timely notice of the alleged breach of warranty"). The complaint must specify how notice was provided: "Proper factual allegations should, at least, include the date and method by which Plaintiff afforded such notice to Defendant." *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018).

The other New York plaintiffs allegedly gave Toyota notice directly, which Toyota concedes is sufficient at the pleading stage.[40] But Mr. Tengowski allegedly gave notice only to the dealership.[41] Toyota contends in its reply that notice to a dealership is insufficient and that notice must be to Toyota. But it acknowledges that New York courts are split on whether the requirement under the UCC for notice is satisfied by notice to the immediate seller (the dealership) as opposed to the manufacturer (Toyota).[42] Because that distinction was illuminated only in the reply brief, the plaintiffs did not address it. On this briefing, the court does not reach the issue now and can address it in the context of an amended complaint.

### 5. UCL Claim and Other Issues

First, because the UCL claim is predicated on dismissed claims, it is dismissed too.

---

[38] *Id.* at 8 (conceding that class claims should be dismissed under Magnuson-Moss Act), 31 (recognizing that the Song-Beverly Act applies only to consumer goods sold in California).

[39] Mot. – ECF No. 24 at 28.

[40] Reply – ECF No. 31 at 19.

[41] Am. Compl. – ECF No. 16 at 10 (¶ 52).

[42] Reply – ECF No. 31 at 19 & n.7 (collecting cases).

Second, the New York plaintiffs cannot assert a UCL claim if the misconduct did not occur here. *Churchill Village, LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126–27 (N.D. Cal. 2000) (non-California plaintiffs could not pursue a preliminary injunction under the UCL for actions that took place out of state) (citing *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999)). The plaintiffs do not challenge this and suggest that only Ms. Shu and the California subclass assert the UCL claim.[43]

Third, the plaintiffs do not respond to Toyota's argument that the FAL claim is limited to California residents.[44] They thus conceded the issue.

## CONCLUSION

The court dismisses the complaint with leave to amend (although certain claims cannot be reasserted, such as any UCL and FAL claims brought by non-California residents). The plaintiffs may file an amended complaint within 28 days and must attach a blackline comparison of the amended complaint against the current complaint.

This disposes of ECF No. 24.

**IT IS SO ORDERED.**

Dated: April 19, 2023

LAUREL BEELER
United States Magistrate Judge

---

[43] Opp'n – ECF No. 29 at 25–26 ("Plaintiff Shu alleges UCL claims. . . .").
[44] Mot. – ECF No. 24 at 18 n.5.