**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARLENE SHU, MARK TENGOWSKI, ROMAN SIVION, and MOHAMED ALMAKALEH, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES USA, INC.; TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>Defendant. | CASE NO. 3:22-cv-04661-LB<br><br>SECOND AMENDED CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; NEGLIGENT MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; BREACH OF EXPRESS WARRANTY; VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT; AND VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.     Plaintiffs Sharlene Shu, Mark Tengowski, Roman Sivion, and Mohamed Almakaleh, by and through their counsel, bring this Class Action Complaint against Toyota Motor Sales USA, Inc. and Toyota Motor North America, Inc. (collectively referred to as "Defendant" or "Toyota"), on behalf of themselves, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices; breach of express warranties; violation of the Song-Beverly Consumer Warranty Act; and violation of

1    the Magnuson-Moss Warranty Act. The following allegations are based upon information and

2    belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

3         2.    This case concerns certain 2022 Toyota RAV4 Prime vehicles, including, without

4    limitation, the XSE and XSE Hybrid models (hereinafter, the "RAV4 vehicles"), sold in the

5    United States whose Monroney stickers, or other written descriptions, contain false

6    representations for which Plaintiffs, and similarly situated consumers, paid for certain

7    "optional" equipment, namely an "Adaptive Front Headlight System – LED Projector

8    Headlights with Auto Level Control and Auto On/Off feature" (hereinafter, "Adaptive

9    Headlights"), that the cars did not have.

10        3.    Toyota markets, advertises, and sells the upgraded RAV4 vehicles with the

11   representation that the vehicles' optional features included the Adaptive Headlights. Defendant

12   specifically represented, on standardized "Monroney" stickers affixed to vehicles for sale,

13   product pamphlets, and its website, that certain models of RAV4 vehicles were equipped with

14   optional Adaptive Headlights that provided additional features than the standard headlights

15   listed on the Monroney sticker. Defendant also made these representations in written

16   specifications for RAV4 vehicles ordered by consumers.

17        4.    The Adaptive Headlights were a valuable safety feature to prospective

18   consumers. When the Adaptive Headlights detect a change in the vehicle's direction, it activates

19   a cornering light and adjusts the direction of the beam to illuminate more of the road around

20   corners and curves. By angling the headlights in the direction of travel, the Adaptive Headlights

21   system will widen the area that the headlights cover and illuminate the direction of travel rather

22   than just the sides of the road. Further, the Adaptive Headlights' auto level control feature

23   automatically adjusts the vertical aim or angle at which the headlights shine light reacting to

24   sensors that detect changes in ride height with changes in the number of passengers or luggage

25   volume.

26        5.    Plaintiff Shu purchased a 2022 Toyota RAV4 Prime XSE AWD SUV from a

27   Toyota dealership in Daly City, California on or about January 18, 2022. The vehicle she

28   purchased had affixed to it a Monroney sticker representing that the vehicle had "optional"

equipment, including the Adaptive Headlights. Eight months after Plaintiff's purchase, Toyota informed Plaintiff that the information provided on the Monroney sticker affixed to the RAV4 she purchased was false, and that vehicle she purchased was not equipped with the Adaptive Headlights. Other than informing her of the misrepresentation, Toyota offered nothing—i.e., no refund, replacement or repair.

6.      Plaintiffs Tengowski, Sivion, and Almakaleh similarly purchased 2022 Toyota RAV4s from Toyota dealerships in New York in early 2022. Toyota provided each of these Plaintiffs with written documentation indicating they were purchasing a RAV4 with a premium package that included adaptive headlights. In each case, the Plaintiff received a car without adaptive headlights despite having purchased the car at a price negotiated in reliance on that feature being included. When each Plaintiff contacted Toyota to complain, Toyota ultimately refused to install the missing headlights, replace the car or refund the money paid for them.

7.      Plaintiffs were misled by Defendant's marketing and advertising materials, literature, brochures, specifications, and Monroney labels that represented that the Adaptive Headlights were in fact an available feature of the RAV4, and thereby were caused to purchase a RAV4 and/or the upgraded RAV4 model because of Defendant's misrepresentations that the RAV4 contained that feature. The Monroney labels and other sales and marketing materials resulted in an express warranty.

8.      Toyota's marketing materials and advertisements concerning the RAV4 vehicles were false and misleading, and were directed at inducing and did cause Plaintiffs and Class Members to purchase the RAV4 vehicles at higher prices than they would otherwise have paid and/or to have purchased higher end models that they believed contained this feature in order to obtain the safety and functionality that such feature presented.

9.      Defendant knew that the RAV4 vehicles it sold and leased in United States did not contain the Adaptive Headlights feature as part of the standard package of features that they had marketed, advertised and/or represented, and that the Monroney labels and other advertising material were false and deceptive.

10.     Despite knowing and admitting that its advertising was false, Defendant refused and failed to issue any recalls to add the promised feature, fix or add the feature when requested by owners and/or lessees, or to reimburse owners and lessees thereby causing them damage.

11.     Moreover, Defendant's failure to include the Adaptive Headlights feature on the cars, as represented, has also resulted in unreasonable, undesired safety hazards associated with, *inter alia*, driving at night.

**PARTIES**

12.     Plaintiff Sharlene Shu is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California. Ms. Shu intends to remain in San Francisco and makes her permanent home there.

13.     Plaintiff Mark Tengowski is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Victor, New York. Mr. Tengowski intends to remain in Victor and makes his permanent home there.

14.     Plaintiff Roman Sivion is, and at all times alleged in this Class Action Complaint was, an individual and a resident of New York, New York. Mr. Sivion intends to remain in New York and makes his permanent home there.

15.     Plaintiff Mohamed Almakaleh is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Syracuse, New York. Mr. Almakaleh intends to remain in Syracuse and makes his permanent home there.

16.     Defendant Toyota Motor North America, Inc. is a corporation incorporated under the laws of the state of California, having its principal place of business in Plano, Texas.

17.     Defendant Toyota Motor Sales USA, Inc. is a corporation incorporated under the laws of the state of California, having its principal place of business in Plano, Texas.

18.     Toyota Motor North America, Inc. designs and manufactures RAV4 vehicles.  As part of this process, it develops the specifications for the RAV4 vehicles, decides which features go on trim lines as base and optional equipment, creates databases reflecting the base and optional features of the RAV4 vehicles, prints window labels itemizing features included in RAV4 vehicles as they are made, fulfills orders for vehicle manufacture and delivery, and makes

and delivers those vehicles to customers via dealerships.   As part of these responsibilities, Toyota Motor North America works in conjunction with Toyota Motor Sales USA to provide information for use in marketing RAV4 vehicles.

19.    Toyota Motor Sales USA, Inc. is responsible for the marketing, advertising and sales of the RAV4 vehicles, including all versions of the website, sales brochures distributed both through dealers and the Toyota.com website, Monroney labels, communications with dealers about the RAV4 vehicles, and the maintenance and service of and complaints about the Adaptive Headlights feature in the RAV4 vehicles. It is also the warrantor for the limited warranties offered by Toyota against defects in materials or workmanship, which apply to all RAV4 vehicles that were originally sold. That warranty's coverage is automatically transferred at no cost to subsequent vehicle owners.

20.    The Defendants identified above in this Class Action Complaint are collectively referred to hereafter as "Defendant" or "Toyota."

21.    At all times herein mentioned, each Defendant was the agent, servant, representative, officer, director, partner or employee of the other Defendant and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each other Defendant.

22.    At all times herein mentioned, each Defendant was a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

23.    At all times herein mentioned, the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

24.    At all times herein mentioned, each Defendant ratified each and every act or omission complained of herein.

25.     At all times herein mentioned, each Defendant aided and abetted the acts and omissions of the other Defendant in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

27.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

29.     In accordance with California Civil Code Section 1780(d), Ms. Shu concurrently files herewith a declaration establishing that, she purchased a Toyota RAV4 Prime XSE AWD SUV from a Toyota dealership in Daly City, California on or about January 18, 2022. (Ms. Shu's declaration is attached to the original complaint, ECF No. 1, as Exhibit A.)

30.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

31.     The 2022 RAV4 Prime models that are the subject of this Complaint include, without limitation, the SE Hybrid, XSE, XSE Hybrid, XLE, XLE Hybrid, XLE Premium, XLE Premium Hybrid, Adventure, TRD Off-Road, Limited, and Limited Hybrid models. These models all have upgraded interior and exterior standard vehicle features over the base level LE model that provided drivers with additional convenience and safety. Plaintiffs and Class

Members paid additional amounts for the upgraded RAV4 vehicles with these additional features. One such feature was the Adaptive Headlights.

**The Adaptive Headlights Are a Safety Feature**

32.     Adaptive Headlights are a feature intended to make the RAV4 vehicles safer to drive at night, low light situations, and/or inclement weather conditions. The headlights' sensors cause them to automatically adjust the angle of the lighting when the driver turns the steering wheel. Specifically, the Adaptive Headlights will pitch the low beams toward the inside of the corner of a turn. By angling the headlights in the direction of travel, the Adaptive Headlights widen the area that the lights cover and illuminate the direction of travel rather than just the sides of the road. Additional light will make hazards on the side of the road more visible and improve safety.

33.     The auto level feature of the Adaptive Headlights automatically adjusts the vertical angle of the headlights' beam in response to sensors that detect changes in ride height caused by changes in the number of passengers or luggage volume.

**Monroney Stickers**

34.     Several of the RAV4 vehicles at issues had Monroney stickers that advertised that the vehicles included the "optional" equipment feature of Adaptive Headlights. The Monroney sticker is required to be affixed to the side window or windshield of every new car sold in the United States and can only be removed by the consumer. *See* 15 U.S.C. § 1231. If the sticker is missing, federal statute authorizes a fine of up to $1,000 per vehicle for each offense, and other fees and penalties are authorized if the sticker is altered illegally.

35.     The Monroney sticker is required to include "the retail delivered price suggested by the manufacturer for each accessory or item of optional equipment, physically attached to such automobile at the time of its delivery to such dealer." 15 U.S.C. § 1232(f)(2).

36.     The Monroney Label affixed to the RAV4 that Plaintiffs, and those similarly situated, purchased stated that the RAV 4 included "Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control & Auto On/Off Feature."

37.     On information and belief, Toyota Motor North America generates and affixes Monroney stickers to RAV4 vehicles as they are manufactured, and then delivers them to customers via dealerships.

38.     On information and belief, Toyota Motor Sales works with Toyota Motor North America to generate Monroney stickers by providing order information to Toyota Motor North America and tracking whether the Monroney Stickers on vehicles delivered are accurate. Toyota Motor Sales also uses the Monroney stickers to sell RAV4 vehicles.

39.     For vehicles purchased directly from dealer lots in early 2022 (i.e., not pre-ordered and delivered at a later date), the Monroney labels Defendants affixed to the vehicles stated that the RAV4's features included "***Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control***."

**2022 Toyota RAV4 Brochure**

40.     Starting in December 2021, Defendants began distributing marketing materials for the 2022 RAV4. Toyota Motor Sales USA developed the 2022 RAV4 marketing materials, using information provided by Toyota Motor North America, which designed and manufactured the vehicles.

41.     One such document was a Toyota 2022 RAV4 brochure (see Attachment A), which Toyota distributed to dealerships across the United States. Toyota also made the brochure available online and distributed them through the Toyota.com website as a PDF.

42.     Toyota's 2022 RAV4 marketing materials falsely stated that the RAV4 Prime XSE and RAV4 Hybrid Limited models of the RAV4 included, for an additional charge, optional premium equipment that included adaptive headlights.

43.     Specifically, the Toyota 2022 RAV4 brochure stated that these models included the "***Adaptive Front Headlight System***" with "***LED projector headlights with*** chrome bezels, ***automatic level and pan controls***, Automatic High Beams (AHB), and auto on/off feature."

44.     Toyota also created a "build & price online configuration tool" for use on the Toyota web site. When a customer ordered a RAV4 for delivery at a later date, Toyota (directly

1    or through its dealers) provide a written specification that listed the equipment ordered, using

2    data provided by Toyota NA and Toyota Sales USA.

3         45.    No later than January 2022 and lasting for some months thereafter, the "build &

4    price" tool similarly stated the "adaptive headlights" were included with the RAV4 Prime XSE.

5         46.    And when customers pre-ordered RAV4's, Toyota's written specifications

6    confirming the orders listed "adaptive headlights" as an included feature of the RAV4 Prime

7    XSE.

8                       **Defendant's Deceptive Misrepresentations**

9         47.    As noted above, in conjunction with its sales of RAV4 automobiles, Toyota

10   represented not only on the Monroney, but also in the RAV4 brochures and other marketing

11   materials, that the upgraded vehicle included Adaptive Headlights. In particular, in the 2022

12   Toyota RAV4 brochure, under the heading "Total Installed Packages & Accessories," Toyota

13   represented that the RAV4 XSE and Hybrid Limited included the "Adaptive Front Headlight

14   System with LED projector headlights with chrome bezels, automatic level and pan controls,

15   Automatic High Beams (AHB), and auto on/off feature."

16        48.    These representations were particularly important as Toyota markets the SE

17   Hybrid, XSE, XSE Hybrid, XLE, XLE Hybrid, XLE Premium, XLE Premium Hybrid,

18   Adventure, TRD Off-Road, Limited, and Limited Hybrid models as higher end versions of the

19   RAV4, because they contain additional or enhanced features, including safety features, beyond

20   those available in the more basic RAV4 model LE. For instance, the brochures note that the

21   basic RAV4 model contains only "projector-beam headlights"– but not the Adaptive Headlights

22   in the premium package models.

23        49.    A reasonable consumer would expect and rely on Toyota's advertisements—

24   including the new vehicle Monroney stickers, the 2022 Toyota RAV4 brochure, and the online

25   "build & price" tool—to truthfully and accurately reflect the features of the RAV4 vehicles.

26   Further, a reasonable consumer attaches material importance to the advertised safety features of

27   a vehicle, as that is one of the most, if not the most, important consideration in making a

28   purchase or lease decision.

50.     Only after purchasing the RAV 4 XSE and Hybrid Limited vehicles (and paying for the Adaptive Headlights feature) did Plaintiffs and Class Members discover that this material feature was not installed in their respective vehicles.

51.     Because of Defendant's misrepresentations and deception, Plaintiffs and Class Members paid a premium for their RAV4 vehicles for the increased safety and luxury that they believed they were obtaining and paid more than they would have paid had they known the Adaptive Headlights were not included in their vehicle. Had Plaintiffs and Class Members known that the Adaptive Headlights feature was not included in their purchase or lease, they would not have purchased and/or leased their RAV4 vehicles or, at a minimum, would have paid less for their purchase and/or lease of such RAV4 models.

52.     In purchasing and/or leasing their RAV 4 vehicles, Plaintiffs and Class Members did not receive the full value that they were led to believe they would receive in their purchase or lease of their RAV 4 vehicle.

**Defendant's Knowledge**

53.     Toyota had actual and/or constructive knowledge that the marketing materials identified above were false.

54.     Both Toyota entities were under a legal duty to ensure that the Monroney sticker attached to each RAV4 was accurate. As a result, each entity was under a legal duty to confirm the features installed on each RAV4 made and sold and the features listed on the respective Monroney sticker.

55.     As the party manufacturing the RAV4 vehicles and printing and affixing the Monroney stickers to them, Toyota Motor North America had actual knowledge both of (i) the actual features of each vehicle it made and (ii) the features listed on each Monroney sticker. Toyota Motor North America thus had actual and/or constructive knowledge of the fact that the Monroney stickers were inaccurate.

56.     As the party overseeing Toyota dealerships and RAV4 sales, Toyota Motor Sales USA monitored delivery of RAV4s to dealerships and the accuracy of Monroney stickers

attached to RAV4s.  Toyota Motor Sales USA thus had actual and/or constructive knowledge of the fact that the RAV4 Monroney stickers were inaccurate.

57.     On information and belief, as related entities making and selling RAV4s as part of a joint enterprise, each defendant also played a role in making the 2022 Toyota RAV4 brochure and the "build & price" tool on the Toyota.com website.  While Toyota Motor Sales USA presumably had primary responsibility for creating these marketing materials, it did so using information provided by Toyota Motor North America, which fulfilled sales order based on those materials.  Accordingly, both defendants had knowledge of the statements in the Toyota marketing materials and knew or should have known that those statements were false.

58.     Sometime around the middle of 2022, Toyota removed the misrepresentations in the 2022 RAV4 brochure and began distributing a corrected version of the 2022 RAV4 brochure.  Toyota thus had knowledge of its misrepresentations not only by the date it implemented those changes, but several months earlier, since it presumably took several months to make the changes.

59.     Toyota also knew of its misrepresentations because customers contacted it to complain that Toyota was not delivering the RAV4 XSE and Hybrid Limited SUVs with the advertised adaptive headlights. Specifically, Plaintiffs Tengowksi, Sivion, and Almakaleh all contacted Toyota Motor Sales USA directly or via the dealership from which they purchased their vehicle to complain that their vehicles did not contain the adaptive headlights. On information and belief, other customers also notified Toyota of this problem. Toyota thus had knowledge of the misrepresentation at least by the date of the first complaint lodged by a RAV4 XSE or Hybrid Limited purchaser, yet knowingly and intentionally continued to distribute the misleading marketing materials and sell RAV4 XSE and Hybrid Limited vehicles using the misrepresentation that they would include adaptive headlights. On information and belief, given that each of the Plaintiffs purchased their vehicles after the 2022 RAV4 had been on sale for some time, Toyota knew it was misrepresenting the features of the RAV4 XSE and Hybrid Limited SUVs when it sold each plaintiff their vehicle.

# PLAINTIFFS' ALLEGATIONS

## SHARLENE SHU

60.     Plaintiff Shu purchased a 2022 Toyota RAV4 Prime XSE AWD SUV from a Toyota dealership in Daly City, California on or about January 18, 2022. The vehicle she purchased had affixed to it a Monroney sticker representing that the vehicle had "optional" equipment, including the Adaptive Headlights. Ms. Shu read and relied upon that representation when purchasing her vehicle.  Ms. Shu also, prior to her purchase, read and relied upon the Toyota 2022 RAV4 brochure. When Ms. Shu purchased her vehicle, she believed it had adaptive headlights based on Toyota's misrepresentations.

61.     As described above and below, Toyota knew its marketing materials and Monroney sticker falsely listed adaptive headlights as included equipment for the 2022 RAV4 XSE when it sold the vehicle to Ms. Shu.

62.     Plaintiff was misled by Defendant's advertising literature, brochures, and Monroney labels that represented that the Adaptive Headlights were in fact an available feature of the RAV4, and thereby was caused to purchase a RAV4 and/or the upgraded RAV4 model because of Defendant's misrepresentations that the RAV4 contained that feature. The Monroney labels and marketing materials resulted in an express warranty.

63.     Plaintiff purchased her RAV4 vehicle primarily for personal, family, or household use.

64.     Plaintiff purchased her RAV4 after she reviewed the Toyota RAV4 advertising and marketing materials, which identified the Adaptive Headlights as a Premium Feature of the vehicle she was purchasing. Plaintiff also reviewed the Monroney label on the RAV4 she purchased, which included the Adaptive Headlights as a feature of the premium package on her vehicle, prior to her purchase. The Monroney sticker and 2022 RAV4 brochure resulted in an express warranty.

65.     Plaintiff paid a higher price for the upgraded XSE model with the premium package under the mistaken belief that the premium package vehicle would be equipped with the features she wanted, including the represented Adaptive Headlights feature. After receiving

her vehicle, however, she discovered that it only came equipped with the standard LED projector headlights.

66.     Eight months after Plaintiff's purchase, Toyota informed Plaintiff that the information provided on the Monroney sticker affixed to the RAV4 she purchased was false, and that vehicle she purchased was not equipped with the Adaptive Headlights. Other than informing her of the misrepresentation, Toyota offered nothing—i.e., no refund, replacement or repair.

67.     Specifically, on or about July 8, 2022, Plaintiff received a letter from Toyota stating that her vehicle did not in fact include Adaptive Headlights. The letter stated, in pertinent part: "It has recently come to our attention that the Monroney Label ("window sticker") on your vehicle indicated that Adaptive Front Headlight System — LED Projector Headlights with Auto Level Control and Auto On/Off feature was included. The feature is not standard on your model and the price was not included in the MSRP." Toyota did not provide Plaintiff an offer of compensation, replacement, repair or other remedy for the failure to deliver the advertised feature.

68.     In the July 8, 2022, letter to Ms. Shu, Toyota falsely told her that the price of the adaptive headlights had not been included in the MSRP, thereby giving the false impression that she had no legal claim against Toyota. Toyota thus attempted to commit a second fraud and false and deceptive act by attempting to mislead Ms. Shu into waiving her legal claims against Toyota.

69.     Although effectively admitting that the advertising and marketing materials and Monroney label were false, misleading and deceptive, Toyota refused to take any steps to repair Plaintiff's vehicle, replace her vehicle with one containing the missing Adaptive Headlights feature or take any other adequate steps to remedy the misrepresentation, deception and missing feature.

70.     Despite knowing and, either directly or through its agents, effectively admitting that the advertising was false, deceptive and misleading, Defendant did not take steps to repair

or replace Plaintiffs' and Class Members' vehicles or provide refunds, thereby causing members of the Class damage.

71.     Finally, Defendant's failure to include the Adaptive Headlights feature on Plaintiff's vehicle, as represented, has also resulted in unreasonable, undesired safety hazards associated with, *inter alia*, driving at night, low light situations, and/or inclement weather conditions.

**MARK TENGOWSKI**

72.     Plaintiff Tengowski purchased a 2022 Toyota RAV4 Prime XSE AWD SUV with premium package from a Toyota dealership in East Rochester, New York, in or around February, 2022. Plaintiff Tengowski special-ordered his RAV4. He negotiated the price and options to be delivered using Toyota's "build & price" online configuration tool, which indicated that the adaptive headlights would be included as part of the premium package. Accordingly, he read and relied upon Toyota's misrepresentation that the RAV4 Prime XSE included adaptive headlights in the "build & price" tool.  He also, prior to his purchase, read and relied on the Toyota 2022 RAV4 brochure that falsely listed adaptive headlights as an included feature of the RAV4 Prime XSE. As part of the ordering process, Toyota supplied a written confirmation (i.e., trade sheet) to Mr. Tengowski before his acceptance of the vehicle and completion of the contract, indicating that the vehicle he was in the process of purchasing had "optional" equipment, including the Adaptive Headlights. In reliance on that representation, Mr. Tengowski placed a $500 deposit for the RAV4. Plaintiff Tengowski's total negotiated price included $3,500.00 for the premium package; the adaptive headlights were the key item for which Plaintiff Tengowski was willing to pay that additional premium.

73.     Around June of 2022, Toyota tried to withdraw its original offer and replace the ordered vehicle with a different one by giving Plaintiff Tengowski a new trade sheet indicating the adaptive headlights would not be delivered. Mr. Tengowski contacted the dealer via email on June 17, 2022 after discovering this. The dealership did not respond. Upon receiving his RAV4 in July 2022, Mr. Tengowski discovered that it did not have the adaptive headlights feature for which he had negotiated and paid. Plaintiff Tengowski then contacted the dealership in July

1  2022 by phone, and was told essentially too bad, "you get what you got." The dealership refused

2  to install the adaptive headlights or refund the money paid for them.

3          74.     Plaintiff Tengowski read and relied upon and was misled by Defendant's 2022

4  RAV4 brochure, it's "build & price" online tool, and the original trade sheet, all of which

5  represented that the Adaptive Headlights were in fact an included feature of the RAV4 with the

6  options he purchased, and thereby was caused to purchase a RAV4 and/or the upgraded RAV4

7  model because of Defendant's misrepresentations that the RAV4 he ordered would contain that

8  feature. The marketing materials and trade sheet resulted in an express warranty.

9          75.     Plaintiff Tengowski purchased his RAV4 vehicle primarily for personal, family,

10  or household use.

11          76.     Plaintiff Tengowski purchased his RAV4 after he reviewed the 2022 RAV4

12  brochure, Toyota's online RAV4 specifications and "build & price" tool, and the written order

13  generated using that tool, all of which identified the Adaptive Headlights as a Premium Feature

14  of the RAV4 Prime XSE he was purchasing. Plaintiff reviewed the trade sheet with the

15  specifications for the RAV4 he purchased, which included the Adaptive Headlights as a feature

16  of the premium package on his vehicle, prior to signing his purchase agreement.

17          77.     Plaintiff Tengowski paid a higher price for the upgraded XSE model with the

18  premium package under the mistaken belief that the premium package vehicle would be

19  equipped with the features he wanted, including the represented Adaptive Headlights feature.

20  After receiving his vehicle, however, he discovered that it only came equipped with the LED

21  projector headlights.

22          78.     Plaintiff Tengowski promptly notified Toyota via the Toyota dealership of the

23  failure to deliver the promised equipment. Toyota refused to take any steps to return or replace

24  Plaintiff Tengwoski's vehicle with one containing the missing Adaptive Headlights feature or

25  take any other adequate steps to remedy the deception and missing feature.

26          79.     Despite knowing and, either directly or through their agents, effectively

27  admitting that their advertising was deceptive and misleading, Defendant did not take steps to

28  repair or replace Plaintiffs' and Class Members' vehicles or provide refunds, thereby causing

1   members of the Class damage.  Toyota knew that it was not selling the vehicle as advertised

2   because it sent him, prior to delivery, an amended order specification in which it unilaterally

3   removed the adaptive headlights, despite the fact that Toyota had already entered into a written

4   agreement and express warranty to deliver the RAV4 Prime XSE with the advertised adaptive

5   headlights.  Toyota's dealership, acting as its agent, made clear that it had no interest in curing

6   this deficiency when it told Mr. Tengowski that he "gets what he got."  In light of Toyota's

7   refusal to fix the problem after receiving notice of the breach of contract and warranty from Mr.

8   Tengowski, further attempts to obtain relief without litigation would have been futile.

9           80.     Finally, Defendant's failure to include the Adaptive Headlights feature on

10   Plaintiff's vehicle, as represented, has also resulted in unreasonable, undesired safety hazards

11   associated with, *inter alia*, driving at night, low light situations, and/or inclement weather

12   conditions.

13   **ROMAN SIVION**

14           81.     Plaintiff Sivion pre-ordered a 2022 Toyota RAV4 Prime XSE AWD SUV from

15   the Waite Toyota dealership in Watertown, New York, on or about December, 2021. Plaintiff

16   Sivion special-ordered his RAV4, and negotiated the price and options to be delivered with the

17   dealership.  Mr. Sivion negotiated his auto purchase relying upon the marketing materials on

18   Toyota's web site (including the 2022 RAV4 brochure and the "build & price" online tool),

19   which indicated that he could obtain adaptive headlights by ordering the navigation package and

20   the premium package. Plaintiff thus read and these materials prior to his purchase and relied

21   upon them to his detriment in making the purchase. His choices were memorialized in a written

22   order printed out on January 13, 2022, indicating that the specific vehicle he was purchasing

23   had "optional" equipment, including the Adaptive Headlights.  This confirmation was presented

24   to him prior to his signing his purchase agreement. Plaintiff Sivion thus read and relied upon

25   that false and misleading written order specification when making his purchase. The premium

26   package cost $3,350 and the prerequisite navigation package cost another $1,620. The adaptive

27   headlights were the primary feature in those two packages that Mr. Sivion wanted.  He felt they

28   were a very important safety feature.

82.     After receiving his RAV4, Mr. Sivion discovered that it did not have the adaptive headlights feature for which he had negotiated and placed a deposit, and which had been listed on his order confirmation. Mr. Sivion contacted the dealer via email in late January 2022 after discovering this. They acknowledged the failure to deliver the promised adaptive headlights, but offered no refund or repair. Sometime around late January or February 2022, the dealership put him in touch with Toyota Motor Sales USA, which said it was the dealer's responsibility to fix the issue. Both the dealership and Toyota Motor Sales USA thus refused to install the adaptive headlights or refund the money paid for them.

83.     Plaintiff Sivon was misled by Defendant's advertising literature, brochures, and trade sheet that represented that the Adaptive Headlights were in fact an available feature of the RAV4 with the options he purchased, and thereby was caused to purchase a RAV4 and/or the upgraded RAV4 model because of Defendant's misrepresentations that the RAV4 he ordered would contain that feature. The marketing materials and trade sheet resulted in an express warranty.

84.     Plaintiff Sivion purchased his RAV4 vehicle primarily for personal, family, or household use.

85.     Plaintiff Sivion purchased his RAV4 after he reviewed and relied upon the 2022 RAV4 brochure at the dealership and the "build & price" tool on Toyota's web site, which identified the Adaptive Headlights as a Premium Feature of the vehicle she was purchasing. Plaintiff also reviewed and relied upon the order confirmation with the specifications for the RAV4 he intended to purchase, which included the Adaptive Headlights as a feature of the premium package on his vehicle.

86.     Plaintiff Sivion paid a higher price for the upgraded XSE model with the premium package under the mistaken belief that the premium package vehicle would be equipped with the features he wanted, including the represented Adaptive Headlights feature. After receiving his vehicle, however, he discovered that it only came equipped with the LED projector headlights. Toyota's false and misleading statements, as well as their breach of the purchase contract and warranty terms, harmed Plaintiff Sivion.

87.     Toyota refused to take any steps to return or replace Plaintiff Sivion's vehicle with one containing the missing Adaptive Headlights feature or take any other adequate steps to remedy the deception and missing feature. In view of Plaintiff Sivion's communications to Toyota Motor Sales USA, Defendants have been on notice of the deficiencies since 2022, and any further attempts by Mr. Sivion to have Defendants cure them prior to litigation would be futile.

88.     Despite knowing and, either directly or through their agents, effectively admitting that their advertising was deceptive and misleading, Defendant did not take steps to repair or replace Plaintiffs' and Class Members' vehicles or provide refunds, thereby causing members of the Class damage.

89.     Finally, Defendant's failure to include the Adaptive Headlights feature on Plaintiff's vehicle, as represented, has also resulted in unreasonable, undesired safety hazards associated with, *inter alia*, driving at night, low light situations, and/or inclement weather conditions.

**MOHAMED ALMAKALEH**

90.     Plaintiff Almakaleh purchased a 2022 Toyota RAV4 Prime XSE AWD SUV from the Bob Johnson Toyota dealership in upstate New York, on or about January 15, 2022. Plaintiff Almakaleh special-ordered his RAV4, and negotiated the price and options to be delivered with the dealership. Mr. Almakaleh read and relied upon the 2022 RAV4 brochure prior to making his purchase. The written order confirmation with vehicle specification (i.e., trade sheet) supplied to Mr. Almakaleh by the dealership, which was a written record of the deal being negotiated presented to him prior to his signing the purchase agreement, indicated that the vehicle had "optional" equipment, including the Adaptive Headlights. Mr. Almakaleh read and relied upon the order specification before entering into the agreement.   The vehicle Mr. Almakaleh purchased also had affixed to it a Monroney sticker representing that the vehicle had "optional" equipment, including the "Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control & Auto On/Off Feature." Mr. Almakaleh read and relied upon that representation when accepting his vehicle.

91.     Shortly after receiving his RAV4, Mr. Almakaleh discovered that it did not have the adaptive headlights feature for which he had negotiated and placed a deposit. Mr. Almakaleh contacted multiple people at the Bob Johnson dealership and Toyota Motor Sales USA shortly after discovering this (i.e., in late January of 2022). Defendant initially offered to install the adaptive headlights, but later reneged on that offer. Defendant also offered a $300 credit to reimburse Mr. Almkaleh, which he did not accept.

92.     Plaintiff Almakaleh was misled by Defendant's Monroney Sticker, advertising literature, brochures (including the 2022 RAV4 brochure), and trade sheet that represented that the Adaptive Headlights were in fact an included feature of the RAV4 with the options he purchased, and thereby was caused to purchase a RAV4 and/or the upgraded RAV4 model because of Defendant's misrepresentations that the RAV4 he ordered would contain that feature. The marketing materials and trade sheet resulted in an express warranty.

93.     Plaintiff Almakaleh purchased his RAV4 vehicle primarily for personal, family, or household use.

94.     Plaintiff Almakaleh purchased his RAV4 after he read and relied upon the 2022 RAV4 Brochure and the "build& price" online tool on the Toyota website, both of which identified the Adaptive Headlights as a Premium Feature of the vehicle he was purchasing. Plaintiff also reviewed and relied upon the written order confirmation (i.e., trade sheet) with the specifications for the RAV4 he was purchasing, which included the Adaptive Headlights as a feature of the premium package on his vehicle, prior to completing his purchase.   Mr. Almakaleh also read and relied upon the Monroney sticker of the vehicle delivered to him when he accepted delivery to complete the purchase.

95.     Plaintiff Almakaleh paid a higher price for the upgraded XSE model with the premium package under the mistaken belief that the premium package vehicle would be equipped with the features he wanted, including the represented Adaptive Headlights feature. After receiving his vehicle, however, he discovered that it only came equipped with the LED projector headlights.

96.     Other than set forth above, Toyota refused to take any steps to repair, return or replace Plaintiff Almakaleh's vehicle with one containing the missing Adaptive Headlights feature or take any other adequate steps to remedy the deception and missing feature. Given Toyota's failure to offer an appropriate refund or repair, offering Defendant further attempts to cure the problems would be futile.

97.     Unlike with Plaintiff Shu, Toyota never sent Mr. Almakaleh a letter acknowledging that the Monroney Label affixed to his automobile falsely stated the vehicle had adaptive headlights.  Thus, despite knowing that it had printed incorrect Monroney Labels, Toyota intentionally chose not to inform Mr. Almakaleh of that fact.

98.     Despite knowing and, either directly or through their agents, effectively admitting that their advertising was deceptive and misleading, Defendant did not take steps to repair or replace Plaintiffs' and Class Members' vehicles or provide refunds, thereby causing members of the Class damage.

99.     Finally, Defendant's failure to include the Adaptive Headlights feature on Plaintiff's vehicle, as represented, has also resulted in unreasonable, undesired safety hazards associated with, *inter alia*, driving at night, low light situations, and/or inclement weather conditions.

## CLASS ALLEGATIONS

100.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

**Class**: All persons in the who purchased or leased, in the United States, a Toyota RAV4 vehicle where any written representation falsely stated the vehicle included Adaptive Headlights.

**California Subclass**: All Class Members who made their purchase in the State of California.

**New York Subclass**: All Class Members who made their purchase in the State of New York.

101.    This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

102.    Numerosity: Plaintiffs do not know the exact size the Class, but they estimate that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

103.    Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led them to believe that the Toyota RAV4 included the Adaptive Headlights feature. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a.    Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented to the Class that the RAV4 vehicles included the Adaptive Headlights;

b.    Whether Defendant's actions violate Federal, California, and New York laws invoked herein;

c.    Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

d.    Whether Defendant's representation regarding the inclusion of the Adaptive Headlights feature are material to a reasonable consumer;

e.    Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

f.    The amount of profits and revenues earned by Defendant as a result of the conduct;

g.    Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

h. Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

104. Typicality: Each Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

105. Adequacy of Representation: Each Plaintiff will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which she complains. Each Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the class. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

106. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult

or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

107.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Each Plaintiff and the Class**

108.    Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

109.    As set forth above, Toyota falsely and/or deceptively represented to each Plaintiff and those similarly situated that their RAV4 included the Adaptive Headlights feature. This was false because the vehicles did not include the Adaptive Headlights feature.

110.    Toyota's misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by each Plaintiff and those similarly situated as to whether to purchase (or lease) the RAV4 vehicles and how much to pay for them.

111.    Each Plaintiff and those similarly situated reasonably relied to their detriment on Toyota's representations. Had each Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Toyota, they would have acted differently by, without limitation, not purchasing/leasing (or paying less for) the RAV4 vehicles.

112.    Toyota had a duty to inform members of the Class at the time of their purchase of the RAV4 automobiles that the vehicles did not include the Adaptive Headlights feature. In making its representations and omissions, Toyota breached its duty to class members. Toyota also gained financially from, and as a result of, its breach.

113.    By and through such fraud, deceit, misrepresentations and/or omissions, Toyota intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Toyota fraudulently and deceptively induced each Plaintiff and those similarly situated to, without limitation, purchase or lease the RAV4 automobiles.

114.    As a direct and proximate result of Toyota's misrepresentations and omissions, each Plaintiff and those similarly situated have suffered damages. In particular, each Plaintiff seeks to recover on behalf of him/herself and those similarly situated the amount of the price premium they paid (i.e., the difference between the price consumers paid for the RAV4 automobiles and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

115.    Toyota's conduct as described herein was willful and malicious and was designed to maximize Toyota's profits even though Toyota knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Plaintiff Shu and the California Subclass**

116.    Plaintiff Shu realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

117.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

118.    Toyota's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

119.    Plaintiff and other members of the subclass are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

120.    The RAV4 vehicles that Plaintiff and similarly situated members of the Class purchased from Toyota are "goods" within the meaning of California Civil Code § 1761.

121.    By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, as described above, Toyota has violated, and continues to violate, §§ 1770(a)(2), 1770(a)(3), 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Toyota misrepresented the approval or

certification of goods. In violation of California Civil Code §1770(a)(4), Toyota used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), Toyota represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Toyota's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Toyota advertised goods with intent not to sell them as advertised.

122.    Specifically, Toyota's acts and practices led consumers to believe that the RAV4 vehicles included the Adaptive Headlights feature when they did not.

123.    Plaintiff Shu requests that this Court enjoin Toyota from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Toyota is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the class will continue to suffer harm.

124.    On or around August 15, 2022, Plaintiff Shu provided Defendant with notice and demand on behalf of herself and all others similarly situated that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Ms. Shu sent a second demand on Toyota Motor Sales USA, Inc. and Toyota Motor North America, Inc. by registered mail with return receipt requested; delivery of that letter on May 2, 2023 has been confirmed by the U.S. Postal Service. To date, despite receiving the aforementioned notices and demands, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy.[1]

125.    Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

_____

[1] Ms. Shu does not seek damages under the CLRA at this time, but intends to move to amend the complaint again to assert a claim for damages after 30 days have passed if Defendant has not complied with the demand.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiff Shu and the California Subclass**

126.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

127.    Beginning at an exact date unknown to each Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Toyota has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the RAV4 automobiles.

128.    As set forth in this Class Action Complaint, Toyota has made representations and statements (by omission and commission) that led reasonable consumers to believe that that the RAV4 automobiles include the Adaptive Front Headlight System – LED Projector Headlights with Auto Level Control and Auto On/Off feature when, in fact, the feature was unfulfilled.

129.    Plaintiff Shu and those similarly situated relied to their detriment on Toyota's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Toyota, they would have acted differently by, without limitation, paying less for the RAV4 automobiles.

130.    Toyota's acts and omissions are likely to deceive the general public.

131.    Toyota engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Toyota has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

132.    The aforementioned practices, which Toyota has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Toyota's competitors as well as injury to the general public.

133.    Plaintiff Shu seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Toyota from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

134.   Plaintiff Shu seeks, on behalf of those similarly situated, an injunction to prohibit Toyota from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

135.   Plaintiff Shu and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Toyota from engaging in any such advertising and marketing practices in the future. Such misconduct by Toyota, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Toyota will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Toyota to which Toyota is not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

136.   As a direct and proximate result of such actions, Toyota and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**On Behalf of Each Plaintiff and the Class**

137.   Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

138.   In selling its RAV4 automobiles to consumers, Toyota made false and misleading statements regarding RAV4 automobiles, the Adaptive Front Headlight System – LED Projector Headlights with Auto Level Control and Auto On/Off feature, as described more fully above. Toyota, however, deceptively failed to inform consumers, at the time of their purchase, that the

- 27 -

Adaptive Front Headlight System – LED Projector Headlights with Auto Level Control and Auto On/Off is not an actual feature of the vehicle, regardless of the representation made on the Monroney label.

139. These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiffs and those similarly situated regarding how much to pay for the RAV4 automobiles.

140. Toyota made identical misrepresentations and omissions to members of the Class regarding the RAV4 automobiles.

141. Toyota should have known its representations were false, and that it had no reasonable grounds for believing them to be true when it made them.

142. By and through such negligent misrepresentations, Toyota intended to induce each Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Toyota negligently induced each Plaintiff and those similarly situated, without limitation, to purchase or lease the RAV4 automobiles at the price they paid.

143. Each Plaintiff and those similarly situated reasonably relied on Toyota's representations. Specifically, each Plaintiff and those similarly situated paid as much as they did for the RAV4 automobiles.

144. Because they reasonably relied on Toyota's false representations, each Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price they paid for the RAV4 automobiles and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

### PLAINTIFFS' FIFTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200, et seq.) On Behalf of Plaintiff Shu and the California Subclass**

145. Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

146.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Toyota has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Toyota has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices by, without limitation, the following:

      a.     engaging in misrepresentation and omissions as described herein;

      b.     violating the California Consumer Legal Remedies Act as described herein;

      c.     violating Song-Beverly Consumer Warranty Act;

      d.     violating the Magnuson-Moss Warranty Act;

      *e.*     violating the Disclosure of Automobile Information, 15 U.S.C. § 1231, *et seq.*

      f.     violating the express warranty provisions of California Commercial Code section 2313; and

      g.     violating the FAL as described herein.

147.    Plaintiff Shu and those similarly situated relied to their detriment on Toyota's unfair, deceptive and unlawful business practices. Had Plaintiff Shu and those similarly situated been adequately informed and not deceived by Toyota, they would have acted differently by, without limitation, paying less for the RAV4 automobiles.

148.    Toyota's acts and omissions are likely to deceive the general public.

149.    Toyota engaged in these unfair practices to increase its profits. Accordingly, Toyota has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

150.    The aforementioned practices, which Toyota has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Toyota's competitors as well as injury to the general public.

151.   As a direct and proximate result of such actions, Plaintiff Shu and the other members of the California Subclass have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the RAV4 automobiles and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

152.   Plaintiff Shu seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and unlawful.

153.   Plaintiff Shu seeks, on behalf of those similarly situated, an injunction to prohibit Toyota from offering the RAV4 automobiles within a reasonable time after entry of judgment, unless Toyota modifies its website and other marketing materials to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Toyota, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Toyota to which Toyota was not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(New York General Business Law §§ 349 & 350)**
**On Behalf of the New York Plaintiffs and the New York Subclass**

154.   Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

155.    Beginning at an exact date unknown to each Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Toyota has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the RAV4 automobiles.

156.    As set forth in this Class Action Complaint, Toyota has made representations and statements (by omission and commission) that led reasonable consumers to believe that that the RAV4 automobiles include the Adaptive Front Headlight System – LED Projector Headlights with Auto Level Control and Auto On/Off feature when, in fact, the feature was unfulfilled. This is consumer-oriented conduct that is materially misleading to consumers.

157.    Each New York Plaintiff and those similarly situated relied to their detriment on Toyota's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Toyota, they would have acted differently by, without limitation, paying less for the RAV4 automobiles.

158.    Toyota's acts and omissions are likely to deceive the general public.

159.    Toyota engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Toyota has engaged in deceptive acts and conduct, as defined by New York General Business Law § 349, and false advertising, as defined and prohibited by New York General Business Law § 350.

160.    The aforementioned practices, which Toyota has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Toyota's competitors as well as injury to the general public.

161.    Each New York Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Toyota from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

162.    Each New York Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Toyota from continuing to engage in the false, misleading and deceptive

advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

163.     New York Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Toyota from engaging in any such advertising and marketing practices in the future. Such misconduct by Toyota, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Toyota will continue to violate the laws of New York, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Toyota to which Toyota is not entitled. New York Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the New York General Business Laws alleged to have been violated herein.

164.     As a direct and proximate result of such actions, Toyota and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFFS' SEVENTH CAUSE OF ACTION**
**(Breach of Express Warranty)**
**On Behalf of Each Plaintiff and the Class**

165.     Each Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

166.     This cause of action is brought pursuant to California Commercial Code § 2100, et seq., and New York U.C.C. § 2-313, et seq. as well as the common law.

167.    Each Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commercial Code § 2103. Plaintiffs Tengowski, Sivion, and Almakaleh were "buyers" of goods as that term is used in New York U.C.C. § 2-313.

168.    Toyota is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.  Toyota is also a "seller" of goods as that term is used in New York U.C.C. § 2-313.

169.    Toyota provided uniform affirmative misrepresentations about the RAV4 vehicles in the misleading advertising and marketing, including the misleading brochures and Monroney labels that stated that the Adaptive Headlights feature was an included exterior feature in the RAV4 vehicles. This uniform affirmative description of the RAV4 vehicles was made part of the basis of the bargain and thereby created an express warranty that the RAV4 vehicles conformed to the description pursuant to the UCC express warranty provisions adopted by California under Cal. Com. Code § 2313. Plaintiffs and Class Members thereby relied upon such warranty. The warranty was a material factor in the decision of Plaintiff and those similarly situated to purchase the RAV4 at the price they paid, and became part of the basis for the transaction. By law, each Plaintiff and Class Members have entered into certain express warranty agreements directly with Toyota.

170.    Specifically, that express warranty and the misleading statements provided that the RAV4 vehicles were equipped with the following features in addition to or in replacement of the exterior features offered on the RAV4 LE models: under the heading "Total Installed Packages & Accessories," Toyota represented that the RAV4 included the "Adaptive Front Headlight System with LED projector headlights with chrome bezels, automatic level and pan controls, Automatic High Beams (AHB), and auto on/off feature." Additionally, in the Monroney Labels presented to at least Plaintiffs Shu and Almakaleh, Toyota represented that the RAV 4 included "Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control & Auto On/Off Feature."

171.   To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

172.   Toyota's representations became part of the basis of the bargain in the purchases by Plaintiff, and those similarly situated, of Toyota's cars, and thus qualify as "express warranties" as defined by section 2313 of the California Commercial Code and N.Y. U.C.C. § 2-313 in connection with the sale of goods to Plaintiff and those similarly situated.

173.   Despite this uniform affirmative misrepresentation, Toyota breached the express warranty to each Plaintiff and Class Members when it delivered to them RAV4 vehicles that did not contain the Adaptive Headlights feature and that did not conform to the description of the vehicles provided to them as consumers.

174.   The defects in the RAV4 automobiles were not apparent at the time of purchase because Toyota intentionally failed to disclose that 2022 RAV4 brochure, the "build & price" online tool, certain Monroney Labels (for at least Shu and Almakaleh) attached to the vehicle windows, and/or written confirmations specifying features of vehicles being ordered were inaccurate and that the RAV4 vehicles did not include the Adaptive Headlights feature.

175.   As a result of Toyota's sale of the RAV4 automobiles that do not perform as warranted and are unfit for expected use, each Plaintiff, and those similarly situated, have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the RAV4 vehicles believing that they were equipped with the Adaptive Headlights and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**PLAINTIFFS' EIGHTH CAUSE OF ACTION**
**(Violation of the Song-Beverly Consumer Warranty Act,**
**Civil Code §§ 1790, *et seq.*)**
**On Behalf of Plaintiff Shu and the California Subclass**

176.   Each Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

177.    This cause of action is brought pursuant to the Song-Berry Consumer Warranty Act, California Civil Code §§ 1790, et seq. (the "Act").

178.    Plaintiff Shu and those similarly situated were "buyers" of "consumer goods" as those terms are defined under California Civil Code section 1791.

179.    The RAV4 automobiles sold to Plaintiff, and those similarly situated, are "consumer goods" as defined in the Act.

180.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the RAV4 vehicles. Defendant knew or had reason to know of the specific use for which the RAV4 vehicles were purchased or leased.

181.    Toyota provided uniform affirmative misrepresentations about the RAV4 vehicles in the misleading advertising and marketing, including the misleading brochures and Monroney labels that stated that the Adaptive Headlights feature was an included exterior feature in the RAV4 vehicles. This uniform affirmative description of the RAV4 vehicles was made part of the basis of the bargain and thereby created an express warranty that the RAV4 vehicles conformed to the description pursuant to the express warranty provisions in Cal. Civ. Code § 1791.2(a). Plaintiff Shu and Class Members thereby relied upon such warranty. The warranty was a material factor in the decision of Plaintiff and those similarly situated to purchase the RAV4 at the price they paid, and became part of the basis for the transaction. By law, Plaintiff Shu and Class Members have entered into certain express warranty agreements directly with Toyota.

182.    Specifically, that express warranty and the misleading statements provided that the RAV4 vehicles were equipped with the following features in addition to or in replacement of the exterior features offered on the RAV4 LE models: under the heading "Total Installed Packages & Accessories," Toyota represented that the RAV4 included the "Adaptive Front Headlight System with LED projector headlights with chrome bezels, automatic level and pan controls, Automatic High Beams (AHB), and auto on/off feature." Additionally, in the Monroney Label, Toyota represented that the RAV 4 included "Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control & Auto On/Off Feature."

183.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

184.    Toyota's representations became part of the basis of the bargain in the purchases by Plaintiff Shu, and those similarly situated, of Toyota's cars, and thus qualify as "express warranties" as defined by Cal. Civ. Code § 1791.2(a) in connection with the sale of goods to Plaintiff and those similarly situated.

185.    Despite this uniform affirmative misrepresentation, Toyota breached the express warranty to Plaintiff Shu and Class Members when it delivered to them RAV4 vehicles that did not contain the Adaptive Headlights feature that did not conform to the description of the vehicles provided to them as consumers.

186.    The defects in the RAV4 automobiles were not apparent at the time of purchase because Toyota intentionally failed to disclose that the Monroney Label attached to the vehicle windows were inaccurate and that the RAV4 vehicles did not include the Adaptive Headlights feature.

187.    As a result of Toyota's sale of the RAV4 automobiles that do not perform as warranted and are unfit for expected use, Plaintiff Shu, and those similarly situated, have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the RAV4 vehicles believing that they were equipped with the Adaptive Headlights and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

188.    Plaintiff Shu, and those similarly situated, have suffered and will continue to suffer damages as a result of Toyota's failure to comply with its warranty obligations. Accordingly, Plaintiff Shu, and those similarly situated, are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Civ. Code §§ 1791.1(d) and 1974.

189.    Toyota's breaches of warranty, as set forth above, were willful. Accordingly, a civil penalty should be imposed upon Toyota in an amount not to exceed twice the amount of actual damages.

### PLAINTIFFS' TENTH CAUSE OF ACTION
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**
**On Behalf of Each Plaintiff**

190.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

191.    This cause of action is brought pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("MMWA").

192.    Each Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

193.    Each Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5), respectively.

194.    The Products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

195.    Section 2310(d)(1) of the Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

196.    The amount in controversy of each Plaintiff's individual claims meet or exceed $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit since each Plaintiff has over $50,000 in attorneys' fees.

197.    Toyota's express warranties are written warranties within the meaning of the Act, pursuant to 15 U.S.C. § 2301(6). Toyota's RAV4 implied warranties are covered under the Act, pursuant to 15 U.S.C. § 2301(7).

198.    Toyota provided uniform affirmative misrepresentations about the RAV4 vehicles in the misleading advertising and marketing, including the misleading 2022 RAV4 brochures and, for at least Plaintiffs Shu and Almakaleh, Monroney labels that stated that the Adaptive Headlights feature was an included exterior feature in the RAV4 vehicles. This

uniform affirmative description of the RAV4 vehicles was made part of the basis of the bargain and thereby created an express warranty that the RAV4 vehicles conformed to the description. Plaintiff and Class Members thereby relied upon such warranty. The warranty was a material factor in the decision of Plaintiff and those similarly situated to purchase the RAV4 at the price they paid, and became part of the basis for the transaction. By law, Plaintiff and Class Members have entered into certain express warranty agreements directly with Toyota.

199.    Specifically, that express warranty and the misleading statements provided that the RAV4 vehicles were equipped with the following features in addition to or in replacement of the exterior features offered on the RAV4 Prime XSE and Hybrid Limited models: under the heading "Total Installed Packages & Accessories," Toyota represented that the RAV4 Prime XSE and Hybrid Limited models included the "Adaptive Front Headlight System with LED projector headlights with chrome bezels, automatic level and pan controls, Automatic High Beams (AHB), and auto on/off feature." Additionally, in the Monroney Label, Toyota represented that the RAV 4 included "Adaptive Front Headlight System – LED Projector Headlights w/ Auto Level Control & Auto On/Off Feature."

200.    The terms of these warranties became part of the basis of the bargain when Plaintiffs and each member of the Class purchased a Product.

201.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

202.    Despite this uniform affirmative misrepresentation, Toyota breached the express warranty to Plaintiff and Class Members when it delivered to them RAV4 vehicles that did not contain the Adaptive Headlights feature that did not conform to the description of the vehicles provided to them as consumers.

203.    The defects in the RAV4 automobiles were not apparent at the time of purchase because Toyota intentionally failed to disclose that the Monroney Label attached to the vehicle windows were inaccurate and that the RAV4 vehicles did not include the Adaptive Headlights feature.

204.    Plaintiffs and each member of the Class had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Defendant and each member of the Class. Privity, however, is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, they are intended beneficiaries of Defendant's express and implied warranties. The dealers were not intended to be the ultimate consumers of the RAV4 vehicles and have no rights under the warranty agreements provided with Toyota's RAV4 vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is not required because Toyota's RAV4 vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

205.    Affording Defendant a reasonable opportunity to cure their breach of the warranties would be unnecessary and futile.[2] At the time of sale of each Product, Defendant knew, or should have known, that the RAV4 vehicles failed to comply with the express warranties, but nonetheless failed to rectify the situation and/or disclose the defects. In addition, despite receiving notice of the breach, Defendant has not made any effort to resolve the defect with the RAV4 vehicles, and, in fact, claim that the feature cost was not included in the MSRP. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs or members of the class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

206.    As a direct and proximate result of the Defendant's breach of the written and implied warranties, Plaintiff and each member of the Class have suffered damages, in that the

---

[2] In the alternative, each Plaintiff, on behalf of themself and those similarly situated, hereby notifies Defendants that they have breached the warranty by not providing the features they claimed would be provided in the warranty—i.e., the Adaptive Headlights feature. Plaintiffs, on behalf of themselves and those similarly situated, additionally demand, without limitation, that Defendant repair or replace the cars to provide the Adaptive Headlights feature or refund customers the value associated with the Adaptive Headlights feature.

RAV4 vehicles did not include the features that they paid for. Each Plaintiff, individually and on behalf of the class, seeks all damages permitted by law, including compensation for the cost of purchasing the RAV4 vehicle with the Adaptive Headlights feature, along with all other incidental and consequential damages, statutory attorney fees, equitable relief, and all other relief allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff, on behalf of themself and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.     Certification of the proposed Class and California Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.     An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.     An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.     An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.     An award of treble damages, except for those causes of action where treble damages are not legally available;

G.     An award of restitution in an amount to be determined at trial;

H.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.     For reasonable attorneys' fees and the costs of suit incurred; and

J.     For such further relief as this Court may deem just and proper.

1

2
## **JURY TRIAL DEMANDED**

3
Plaintiffs hereby demand a trial by jury.

4
Dated: May 17, 2023

5
GUTRIDE SAFIER LLP

6
*/s/Anthony J. Patek/s/*
Seth A. Safier (State Bar No. 197427)

7
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)

8
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)

9
  anthony@gutridesafier.com
100 Pine Street, Suite 1250

10
San Francisco, CA 94111
Telephone: (415) 639-9090

11
Facsimile:  (415) 449-6469

12
*Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28